Anderson, J.
delivered the opinion of the court.
This is an appeal from an interlocutory decree óf the Circuit court of Wythe county. The only error assigned in the decree is that it allows the executors a credit for $5,000, which was invested iu Confederate securities, and is wholly lost to the estate.
Henry Ilonaker, the testator of the appellees, departed this life in January 1868. By the ninth clause of his will, he directs his executors to dispose of all his personal property not otherwise disposed of by his will, other than the slaves, to the best advantage, either publicly or privately, as they may choose ; and his slaves he authorizes to be sold to masters of their own - choosing, and at prices below their appraised value, if necessary to carry out his humane purpose of allowing them to select their masters, &c.
The will was admitted to probate on the 5th of February 1863, and on the 19th of that month the executors made sale of the property. It had been appraised with reference to Confederate values, and the purchasers ■were privileged to pay in Confederate money. That constituted the only circulating medium [ and it may well be presumed, from the facts in the record, was the currency which it was contemplated by the testator would be received by his executors for the property which he directed them to sell; and upon no other conditions could the sale have been effected, and the purposes and wishes of the testator, as indicated by his will, carried out. The insecurity of the property, in the dis *411 turbed state of the country, seemed also to impress upon the minds of the executors the importance of an early sale ; and it was the unanimous opinion and wish of the adult legatees that the sale should be made for Confederate money. The proceeds of the sale, together with cash on hand, of which $2,301 was Confederate money, and $609.40 received on debts due the estate, amounted to $32,535.13.
On the 2d of December 1863, the executors made a settlement before a commissioner of the County court of Pulaski, showing that they had disbursed of that sum $23,855.38, leaving a balance in their hands of $8,679.75.
In November 1864, less than a year after the first settlement, they made another before the same commissioner, in which they receive a credit for $5,000,1 Invested in Confederate bonds, under an order of the judge of the Circuit court of Pulaski.” This credit is allowed by the interlocutory decree aforesaid, and is the ground of the complaint and appeal.
The executors, in their answer, say “they have fully and fairly, so far as they know or believe, accounted for and disbursed to parties legally entitled to receive it, all the funds which have come to their hands, except the sum of $5,000, which is about the amount the infant legatees were entitled to. There being no person to whom respondents could safely pay their funds, they applied to the judge of the Circuit court of Pulaski county for authority tolnvest this sum for the benefit of the persons entitled to it. That an order was made by the said judge, authorizing them to invest it in Confederate States bonds ; which they did ; and that they deposited the money and obtained a certificate from the proper repository, entitling them to demand a bond for the amount invested. But before the bond was obtained the war ended, and the authority to issue bonds terminated. These statements of the answer are well supported by the proofs in the record.
*412 The will, if it does not make it the duty of the executors to sell, clearly invests them with power to sell. in exercisiug the discretion, they acted with as muc^ Pru(lence and judgment as the most prudent and judicious would have been likely to exhibit in the same circumstances. It is evident that, in perfect good faith, they discharged the trust reposed in them with a view to the good of the estate. They may have erred; if so, it was an error into which the wisest might have fallen. "We cannot say they did err. It is impossible to say that, under the circumstances, they could have acted differently with better results. They sold the personal property as directed by the will, and as was desired by all the adult legatees, paid the debts and expenses of administration, and the legacies to those who were capable of receiving payment, retaining only the sum of $5,000—about what was necessary to pay the infant legatees. And this sum they invested in Confederate securities, under the direction of the Circuit court, as authoi’ized by an act of the legislature, that it might be kept at interest, ready to be paid to the infant legatees as they respectively arrived of age to receive it. The authority of the court was not necessary to warrant the investment, as they were expressly authorized by the will “to hold the money in their hands, or to loan it out, as they may think best, and to pay the children as they become of age.” But it shows with what scrupulous care and fidelity they desired to do right, and to conform to all the requirements of the law in the administration of their trust; and it strengthens their claim to the protection of the courts.
Five thousand dollars of the assets of the estate, which could not be disbursed in consequence of the infancy of some of the legatees, without fault of t.he executors, but as a consequence of the result of the war, has been lost. Should the loss fall upon them ? The case is not now prepared to decide upon whom the loss should *413 fall. But upon well settled principles, which have been recently declared by this court in Ducts’ commismissioner v. Harman & al., 21 Gratt. p. 194, and which need not be repeated, we are clearly of opinion that it should not fall upon the executors. ¥e are of opinion, therefore, to affirm the decree of the Circuit court.
Decree affirmed.